IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Docket No. 1:20-cr-94-MR-WCM |
| ) | |
| v. ) | **BILL OF INDICTMENT** |
| ) | |
| DAVID STUART LUTZ ) | Violations: |
| ) | 42 U.S.C. § 6928 |
| ) | |

### THE GRAND JURY CHARGES:

At the specified times and at all times relevant to this Bill of Indictment:

### SUMMARY

1. The Defendant, DAVID STUART LUTZ ("LUTZ"), violated the Federal hazardous waste statute, known as the Resource Conservation and Recovery Act ("RCRA"). He illegally directed employees of the Department of Public Works ("DPW) of the City of Brevard, North Carolina ("City"), to dig up soil from the backstop of the City's firing range known to be hazardous for lead, without the use of any of the required protective equipment or procedural safeguards. He then had those employees move the soil in City vehicles, without a hazardous waste manifest, to the DPW Operations Center and store it there, despite it not being permitted as a treatment, storage, or disposal location for hazardous waste such as lead.

### INTRODUCTORY ALLEGATIONS

2. LUTZ was at all times relevant to this Bill of Indictment the Director of the DPW. Part of his responsibilities include overseeing the construction of the City's equalization tank project, which included the removal, transportation, and disposal of hazardous waste from the former firing range.

3. Since 2005, the City had a firing range located next to its wastewater treatment plant.

4. Lead, which is found in ammunition, is a toxic substance and has the characteristics of "hazardous waste" under the RCRA. Lead exposure can seriously harm human health. Well-documented adverse effects of lead exposure include damage to the brain and nervous system, slowed growth and development, lower IQ, learning and behavior problems, hearing and speech problems. Solid wastes that contain lead at a concentration of 5 milligrams per liter (mg/l) or greater, as determined by a specific analytical procedure known as the Toxicity Characteristic Leaching Procedure ("TCLP"), Test Method 1311, will exhibit the hazardous characteristic of toxicity, and will be considered "hazardous waste" for purposes of RCRA. 40 C.F.R. § 261.24(a).

5. In or about June 2014, the City, through LUTZ, retained the services of a consultant company (hereinafter the "Consultant Company") regarding the City's firing range. The Consultant Company's main contact with the City was not an environmental expert, but he received guidance from an environmental expert colleague at the Consultant Company and passed that guidance on to the City through LUTZ. After LUTZ raised the issue of lead, the Consultant Company included analysis of the soil from the firing range backstop, as well as advice about what was required to remove, transport, and dispose of the soil.

6. The Consultant Company advised LUTZ, at least as far back as in an email on December 12, 2014, that a sample from the firing range had a high concentration of lead following a TCLP analysis. The range soil analysis came back at 129 mg/L, far above the regulatory limit of 5 mg/l. The Consultant Company specifically advised LUTZ that the material was "Hazardous" and that it "will have to be disposed of at a Subtitle C Landfill, with the closest one I'm aware of in Alabama."

7. On May 3, 4, and 5, 2016, however, LUTZ directed his subordinate, W.A.C. to have subordinate employees with the DPW, including W.A.D. and N.W.L., transport 20 truckloads of soil from the firing range backstop to the City's Operation Center; transport that lead-contaminated soil without a hazardous waste manifest; and store it at an unpermitted location, that is, the DPW Operations Center located at 235 Cashier Valley Road, Brevard, North Carolina; all in violation of the RCRA.

## STATUTORY AND REGULATORY BACKGROUND
## FOR STORING HAZARDOUS WASTE

8. This investigation concerns alleged knowing violations of the RCRA, 42 U.S.C. §§ 6901 through 6992k, and regulations promulgated under that statute. The RCRA is the Nation's primary hazardous waste legislation. The RCRA was enacted in 1976 as a response to the growing number of hazardous waste sites resulting from unregulated disposal practices. RCRA's objectives include protection of human health and the environment and conservation of valuable material and energy resources. 42 U.S.C. § 6902(a). The RCRA accomplishes its objectives in part through a "cradle-to-grave" regulatory system governing the generation, storage, transportation, tracking, treatment and disposal of hazardous wastes. 42 U.S.C. §§ 6921-6939g.

9. The RCRA defines a hazardous waste, in relevant part, as "a solid waste ... which because of its quantity, concentration, or physical, chemical or infectious characteristics may -- (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. § 6903(5).

10. To be regulated as hazardous waste under the RCRA, a material must first be a "solid waste." The RCRA regulations define the term "solid waste" as any discarded material, with some exclusions. 40 C.F.R. § 261.2(a)(1); See 261.4(a) (providing list of RCRA solid waste exclusions). The RCRA regulations define discarded material as any material which is abandoned; recycled; inherently waste-like; or certain military munitions, as 40 C.F.R. Part 261

further defines those four terms. 40 C.F.R. § 261.2(a)(2)(i). Abandoned materials include those that are "accumulated, stored, or treated ... before or in lieu of being abandoned by being disposed of ..." 40 C.F.R. § 261.2(b).

11. A solid waste is considered a "hazardous waste" under the RCRA in two ways. First, the RCRA regulations may define a solid waste as a hazardous waste if that waste appears on one or more lists of hazardous wastes in the RCRA regulations. 40 C.F.R. § 261.30 *et. seq.* These lists describe each listed hazardous waste as either a particular chemical compound, or waste from a specific industrial process. Second, the RCRA regulations may define a solid waste as a hazardous waste if that waste exhibits any of the following characteristics: ignitability, corrosivity, reactivity or toxicity. 40 C.F.R. § 261.20(a), 261.21-261.24. These characteristics are typically determined by analytical procedures specified in the regulations.

12. Among the contaminants that can make a waste a "hazardous waste" under the RCRA is the metal lead. Solid wastes that contain lead at a concentration of 5 milligrams per liter (mg/L) or greater, as determined by a specific analytical procedure known as the Toxicity Characteristic Leaching Procedure (TCLP), Test Method 1311, will exhibit the hazardous characteristic of toxicity, and will be considered "hazardous waste" for purposes of RCRA. 40 C.F.R. § 261.24(a).

13. RCRA authorizes the EPA to promulgate regulations setting forth standards applicable to hazardous waste generators and transporters, as well as owners and operators of hazardous waste treatment, storage and disposal ("TSD") facilities. 42 U.S.C. §§ 6922-6924. Under that authority, the EPA has promulgated regulations that are set forth at 40 C.F.R. Parts 262, 263, 264-270. RCRA also establishes a nationwide permit program for owners and operators of TSD facilities. 42 U.S.C. § 6925.

14. Once a waste has been identified as a "hazardous waste," it is subject to the regulations promulgated under the RCRA. Hazardous wastes may be transported to, stored at, and treated by or disposed of at permitted TSD facilities only. 42 U.S.C. §§ 6923(a)(4), 6925(a), 6926. Each RCRA permit imposes regulatory conditions that are specifically tailored and limited to the types of hazardous waste and associated waste-handling activities at that particular facility. A facility may only handle those hazardous wastes and perform those activities specified in its RCRA permit. 42 U.S.C. § 6925(a), *See* 40 C.F.R. § 264.

15. In order to create a cradle-to-grave tracking system for hazardous wastes, manifests generally must accompany hazardous wastes that are being transported. The generator of a waste is required to assess whether it is solid waste and a hazardous waste. The generator, the transporter, and the designated permitted facility that receives the waste must all retain copies of that manifest. Among other things, the manifest must contain a complete description of the waste; the quantity and type of containers holding the waste; and the name and address of a receiving facility that is permitted to handle the waste. 40 C.F.R. § 262.20, et. seq.

16. Under RCRA, individual States may, with the EPA's approval, operate a hazardous waste program. 42 U.S.C. § 6926. The EPA initially authorized the State of North Carolina to administer a state hazardous waste program effective on December 31, 1984 (49 Fed. Reg.

48694). The State of North Carolina Department of Environmental Quality (NCDEQ) currently administers the delegated RCRA program.

17. Landfills are regulated under the RCRA Subtitle D (solid waste) and Subtitle C (hazardous waste) or under the Toxic Substances Control Act (TSCA). Subtitle D focuses on state and local governments as the primary planning, regulating and implementing entities for the management of nonhazardous solid waste, such as household garbage and nonhazardous industrial solid waste.

18. Subtitle C establishes a Federal program to manage hazardous wastes from cradle-to-grave. The objective of the Subtitle C program is to ensure that hazardous waste is handled in a manner that protects human health and the environment. To this end, there are Subtitle C regulations for the generation, transportation and treatment, storage or disposal of hazardous wastes.

19. The criminal provisions of RCRA provide, in relevant part, that "any person who ... knowingly treats, stores, or disposes of any hazardous waste identified or listed under this subchapter ... without a permit under this subchapter... shall, upon conviction, be subject to a fine of not more than $50,000 for each day of violation, or imprisonment not to exceed ... five years ... [,] or both. 42 U.S.C. § 6928(d)(2)(A).

## COUNT ONE
### (RCRA Violation – Illegal Transportation of Hazardous Waste without a Manifest)

20. The Grand Jury realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 19 of this Bill of Indictment into each and every count in this Bill of Indictment.

21. From on or about May 3, 2016, to on or about May 5, 2016, in Transylvania County, within the Western District of North Carolina, and elsewhere, the Defendant,

**DAVID STUART LUTZ,**

did knowingly transport, and cause to be transported, regulated materials characterized as Resource Conservation and Recovery Act hazardous waste under Title 40, Code of Federal Regulations, Section 261 *et seq.*, that is, lead, at or near the properties located at 3226 Wilson Road, Brevard, North Carolina 28712, without a manifest required by the United States or by the State of North Carolina, in violation of Title 42, United States Code, Section 6928(d)(5), and did aid and abet the same, in violation of Title 18, United States Code, Section 2.

## COUNT TWO
### (RCRA Violation – Illegal Transportation of Hazardous Waste to an Unpermitted Facility)

22. The Grand Jury realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 19 of this Bill of Indictment into each and every count in this Bill of Indictment.

23. From on or about May 3, 2016, to on or about May 5, 2016, in Transylvania County, within the Western District of North Carolina, and elsewhere, the Defendant,

**DAVID STUART LUTZ,**

did knowingly transport, and cause to be transported, regulated materials characterized as Resource Conservation and Recovery Act hazardous waste under Title 40, Code of Federal Regulations, Section 261 *et seq.*, that is, lead, from at or near the property located at 3226 Wilson Road, Brevard, North Carolina, to a facility that does not have a permit to receive hazardous waste issued by the United States or by the State of North Carolina to store such waste, that is, the Department of Public Works Operations Center located at 235 Cashier Valley Road, Brevard, North Carolina, in violation of Title 42, United States Code, Section 6928(d)(1), and did aid and abet the same, in violation of Title 18, United States Code, Section 2.

## COUNT THREE
### (RCRA Violation – Illegal Storage of Hazardous Waste)

24. The Grand Jury realleges and incorporates by reference all of the allegations contained in paragraphs 1 through 19 of this Bill of Indictment into each and every count in this Bill of Indictment.

25. From on or about May 3, 2016, to on or about May 5, 2016, in Transylvania County, within the Western District of North Carolina, and elsewhere, the Defendant,

**DAVID STUART LUTZ,**

did knowingly store, and cause to be stored, regulated materials characterized as Resource Conservation and Recovery Act hazardous waste under Title 40, Code of Federal Regulations, Section 261 *et seq.*, that is, lead, at or near the property without a permit to receive hazardous waste issued by the United States or by the State of North Carolina to store such waste, that is, the Department of Public Works Operations Center located at 235 Cashier Valley Road, Brevard, North Carolina, in violation of Title 42, United States Code, Section 6928(d)(2)(A), and did aid and abet the same, in violation of Title 18, United States Code, Section 2.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

A TRUE BILL: **NAME REDACTED**

FOREPERSON

R. ANDREW MURRAY
UNITED STATES ATTORNEY

STEVEN R. KAUFMAN
ASSISTANT UNITED STATES ATTORNEY